UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER CONSTABLE,              )
                                 )
    Plaintiff,                   )
                                 )
v.                               )
                                 )    CASE NO.: 8:10-cv-01778-EAK-TGW
AGILYSYS, INC.,                  )
                                 )
    Defendant.                   )
_____)

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant's Motion for Summary Judgment, (Doc. 17), and Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, (Doc. 25). For the reasons set forth below, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## PROCEDURAL HISTORY

Plaintiff, Jennifer Constable ("Mrs. Constable"), initially filed this action on July 12, 2010, in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. Defendant, Agilysys, Inc. ("Agilysys"), then removed this case to the Middle District of Florida based on diversity of citizenship, as Mrs. Constable is a citizen of Florida, and Agilysys is an Ohio corporation with its principle place of business in Cleveland, Ohio.

Plaintiff re-filed her complaint with the Middle District of Florida on August 9, 2010, alleging violations of Title VII of the Civil Rights Act (Title VII) and the Florida Civil Rights Act (FCRA). Plaintiff's Complaint contains four counts: (1) pregnancy discrimination in violation of Title VII, (2) sex discrimination in violation of the FCRA, (3) retaliation in violation of Title VII, and (4) retaliation in violation of the FCRA. Defendant filed its Answer to Plaintiff's Complaint on August 13, 2010. On April 29, 2011, Defendant filed its Motion for Summary Judgment.

Plaintiff filed her Response in Opposition to Defendant's Motion for Summary Judgment on May 27, 2011, after being granted an extension to file a reply on May 13, 2011.

## STATEMENT OF FACTS

The following facts are submitted by the parties in support and/or in opposition to Defendant's Motion for Summary Judgment. The Court recognizes these as "facts" only in regard to resolution of the pending motion.

Jennifer Constable, is a former Account Executive with Defendant, Agilysys, Inc. (Constable Dep. 157:1-5.) She began working for Agilysys on June 5, 2008, as a "junior sales representative." (*Id.* at 156:5-7.) At this time, Mrs. Constable had no sales experience. (*Id.* at 68:2-72:13.) She was initially hired and supervised by Randy Barnhardt. (*Id.* at 156:17-19.) Mr. Barnhardt created the Junior Sales Executive position just prior to hiring Mrs. Constable, with the intention to mentor and groom future Account Executives who lacked experience. (Barnhardt Dep. 38:6-13.)

In January of 2009, Mrs. Constable was promoted to Account Executive at the recommendation of Mr. Barnhardt. (Constable Dep. at 157:1-5.) She was one of seven such employees in the southeast region and her particular territory encompassed large portions of Georgia and Florida. (*Id.* at 92:8-13; Barnhardt Dep. 21:2-4.) At this time, Mr. Barnhardt had a positive impression of Mrs. Constable and issued a positive performance review in February of 2009. (Barnhardt Dep. 79:11-18.) In a letter to human resources in November of 2008, Mr. Barnhardt commented that Mrs. Constable was a "rising star" at the company and thus deserving of the promotion. (*Id.* at 65:6-12.) However, by April of 2009, Mrs. Constable began to become concerned with her sales numbers and Mr. Barnhardt told her to get her sales numbers up.

(Constable Dep. Ex. 19.) However, no official disciplinary action was taken at this time. (Barnhardt Dep. 87:9-14.)

In July of 2009, David DeGroot, another Account Executive in the southeast region, was promoted to Sales Director, thus becoming Mrs. Constable's supervisor. (DeGroot Dep. 39:11-40:2.) This occurred after Mr. Barnhardt was himself promoted to Vice President of Sales. (*Id.*) At this time there were seven Account Executives in the southeast region and Mrs. Constable was ranked in the top half of revenue production. (*Id.* at 40:3-6 & 49:5-8.) Shortly after receiving his promotion, Mr. DeGroot received an unsatisfactory performance review, based in large part on the underperformance of the Account Executives working under him. (*Id.* at 63:6-19.)

Later in July of 2009, Mr. DeGroot learned that Mrs. Constable was pregnant when she sent an email to inform him that she had to go to the emergency room due to a possible complication with her pregnancy. (*Id.* at 42:19-24.) Shortly thereafter, Mrs. Constable informed Mr. DeGroot that her doctor had placed her on a week of bed rest due to a possible miscarriage. (*Id.* at 44:19-23.)

On August 14, 2009, Mr. DeGroot placed Mrs. Constable on a Performance Improvement Plan (PIP) with four specific goals to be completed in 60 days. (Constable Dep. 203:7-9.) Mrs. Constable was required to (1) achieve $500,000 in "Product Sales Revenue;" (2) develop a $1,500,000 "pipeline;" (3) make 25 "cold calls" each week, resulting in 3-5 face to face meetings, and ultimately two new customers with a minimum of $50,000 in sales; and (4) use Agilysys' Salesforce software properly. (*Id.* at Ex. 12.) At the end of the 60 day period, Mrs. Constable had not met all of the goals of the PIP, principally the new customer and Product Sales Revenue requirements. (*Id.* at Ex. 13.) Mr. DeGroot extended the PIP for thirty days but she did not reach

her goals in the extended period and was discharged in November of 2009. (*Id.* at Ex. 13 & 217:23-218:5.)

During this same time frame, Kevin Kelley, another Account Executive, was placed on a PIP with similar goals to Mrs. Constable. (DeGroot Dep. 55:17-56:9.) Mr. Kelley was working in a different territory, mainly the Charlotte area, where Agilysys had a much weaker presence than in Florida. (Kelley Dep. 21:17-22:3.) Mr. Kelley joined Agilysys with over twenty years of experience in this field. (*Id.* at 8:20.) At the end of his PIP, Mr. Kelley had not met his goals and had performed objectively worse than Mrs. Constable in terms of revenue generation. (*See* Pl.'s Resp. Def.'s Mot. Summ. J. Ex. B & D.) Mr. Kelley was not terminated. (DeGroot Dep. 56:18-20.)

Following Mrs. Constable's discharge, Jim Memoli was hired to fill the vacancy. (Memoli Dep. 21:18-23.) Mr. Memoli had around 12 years of prior sales experience in the industry before being hired by Agilysys. (*Id.* at 5:2-6.) In his first year of employment, Mr. Memoli did not reach the expected revenue goals for an Account Executive, but he was not placed on a PIP. (DeGroot Dep. 71:21-24 & 72:18-20.) All Account Executives are expected to achieve $5,000,000 in annual revenue and all Account Executives were aware of this target. (Barnhardt Dep. 95:12-14.) According to Agilysys, revenue generation is the most important measure of an Account Executive. (*Id.* at 88:25-89:6.)

Agilysys employs a progressive disciplinary policy which includes several sequential steps before an employee is terminated. (*Id.* at Ex. 6.) According to the company policy, supervisors should engage in an informal discussion with the underperforming employee then formal counseling, which includes a specific form to be filled out. (*Id.* at 107:7-20 & Ex. 6.) If both of those steps fail, a PIP is employed as a "last-chance program." (*Id.* at 108:1-8.) None of

these steps were followed prior to placing Mrs. Constable or Mr. Kelley on their respective PIPs. (*Id.* at 109:1-6.) However, Agilysys' policy states that "The Company does not 'guarantee' that any of the . . . 'steps' will be taken prior to discharge." (*Id.* at Ex. 6.)

## STANDARD OF REVIEW

Summary judgment is properly granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding summary judgment, the court must consider all evidence in the light most favorable to the nonmoving party, *Sweat v Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983), and must draw all reasonable inferences in favor of the nonmoving party, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating an absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). This burden may be discharged if the moving party can show an absence of evidence to support the nonmoving party's case. *Id.* at 323, 325. If the moving party meets this burden, the nonmoving party must then designate specific facts demonstrating a genuine issue of material fact in order to avoid summary judgment. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Issues of fact are "genuine" only if a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 249. Material facts are those facts that will affect the outcome of the trial. *Id.* at 248; *Hickson Corp. v. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). The weighing of evidence and determinations of credibility are the functions of the jury, not the judge. *Anderson*, 477 U.S. at 255. Therefore, if the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the

motion for summary judgment denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

## DISCUSSION

I.  **Count I: Title VII Pregnancy Discrimination**

Discrimination on the basis of "pregnancy, childbirth, or related medical conditions" is prohibited by the Pregnant Discrimination Act (PDA). 42 U.S.C. §2000e(k). The test for discrimination under Title VII applies equally to claimants under the PDA. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312-13 (11th Cir. 1994). A plaintiff may prove discrimination either through direct evidence or through circumstantial evidence which permits an inference of unlawful discrimination. *Id.* at 1313. Summary judgment may be avoided if a plaintiff can establish a prima facie case and then show all of a defendant's proffered non-discriminatory reasons to be mere pretext for discrimination. *Brockman v. Avaya, Inc.*, 545 F.Supp.2d 1248, 1253 (M.D. Fla. 2008) (citing *Combs v. Plantation patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). Plaintiff makes no claim of direct evidence of discrimination, and therefore, must rely on circumstantial evidence to sustain her claim. (*See* Pl.'s Resp. at 7.)

A.  **Mrs. Constable Can Establish a Prima Facie Case**

A prospective plaintiff may establish a prima facie case under Title VII by proving that: (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified for her job, and (4) her employer treated similarly-situated non-pregnant employees more favorably. *See Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006).

It is not disputed that Mrs. Constable satisfies the first three elements: she was pregnant, she was placed on a PIP and terminated, and she was promoted from a probationary position less

6

than a year before she was terminated. (*See* Def.'s Mot. Summ. J. at 7.) The issue centers entirely on whether Agilysys treated similarly situated, non-pregnant employees more favorably than Mrs. Constable. (*See id.*)

Defendant identifies three possible people who Mrs. Constable may point to as similarly situated employees, Kevin Kelley, David DeGroot, and John Memoli, but argues that none of them can be considered similarly situated. (Def.'s Mot. at 7.) Employees can be considered similarly situated if they are subject to the same employment policies, relative rank or job title is immaterial to this analysis. *Latham v. Department of Children and Youth Serv.*, 172 F.3d 786, 793 (11th Cir. 1999). In making this inquiry, the Court also looks to whether the "quantity and quality of the comparator's misconduct" is "nearly identical." *Burke-Fowler*, 447 F.3d at 1323 (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999)).

At a basic level, Kevin Kelley and John Memoli are subject to the same employment policies, have the same supervisor, and have the same expectations in terms of work performance as Mrs. Constable. (*See* Barnhardt Dep. 94:13-14.) It is questionable, but ultimately immaterial, whether Dave DeGroot is similarly situated since he had a different supervisor, and possibly different expectations, while he was an Account Executive.

Next, the Court must determine whether the misconduct by Mr. Kelley and/or Mr. Memoli was "nearly identical," in quantity and quality, to the misconduct by Mrs. Constable. With regard to Mr. Kelley, both he and Mrs. Constable were placed on a PIP by Mr. DeGroot at nearly the same time, and both received a thirty day extension after failing to meet all of their goals during the first sixty days. (DeGroot Dep. 55:17-56:9.) Over the course of their PIPs, Mrs. Constable and Mr. Kelley generated a total revenue of $371,000[1] and $18,500 respectively, falling short of

---

[1] This is the amount attributed to Plaintiff by Mr. DeGroot. Plaintiff alleges that this is not accurate and the correct amount is $571,802.12 which would have satisfied the revenue generation requirement of her PIP.

7

the $500,000 target. (*See* Pl.'s Resp. Ex. B & D.) By the end of their PIPs, both employees had satisfactorily used and maintained Agilysys Salesforce software, and both had met their pipeline goals. (*See id.*) However, by the end of the extended PIP, Mr. Kelley had met the targeted number of in-person sales calls while Mrs. Constable fell short of this goal. (*See id.*) Neither employee successfully secured two new customers with sales of $50,000 each. (*See id.*) Given the fact that both employees were placed on their PIP at the same time and that both failed to meet all of their goals, a reasonable jury could find that their mistakes were nearly identical in quality and quantity, and thus they are similarly situated, despite the fact that Mr. Kelley's territory was more difficult than Mrs. Constable's. Once that is established, there is enough presented to allow the issue to go to the finder of fact that Mr. Kelley was treated more favorably than Mrs. Constable.

Mr. Memoli, on the other hand, was not placed on a PIP even after falling short of the $5,000,000 expected annual sales. However, he did achieve upwards of $3,000,000, while Mrs. Constable achieved only just over $1,000,000 during roughly the same time frame. (DeGroot Dep. 71:21-24.) Given the magnitude of the disparity in misconduct between Mrs. Constable and Mr. Memoli, the Court cannot reasonably say that they were similarly situated under the "nearly identical" standard. *Burke-Fowler*, 447 F.3d at 1323. However, Mrs. Constable has successfully established a prima facie case for pregnancy discrimination by pointing to Mr. Kelley, a similarly situated employee, who was not a member of her protected class, and who was treated more favorably by Agilysys.

**B.    Mrs. Constable Can Show Agilysys' Reasons to be Pretext.**

Once a plaintiff has established a prime facie case under Title VII, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its action. *EEOC v. Joe's Stone*

*Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). Defendant argues that it discharged Mrs. Constable because she failed to meet the goals of her PIP. (Def.'s Mot. at 11.) With a non-discriminatory reason established, the burden shifts to the Plaintiff requiring a showing that Defendant's proffered reason is mere pretext for unlawful discrimination. *Joe's Stone Crabs*, 296 F.3d at 1272-73.

In showing pretext, Plaintiff must offer more than mere "conclusory allegations or unsupported assertions." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). However, a "close temporal proximity" between Plaintiff becoming pregnant and Defendant's adverse employment action "provides some evidence of pretext sufficient to survive summary judgment." *McCullen v. R D R, LLC*, 2007 WL 2071362 at *8 n.11 (M.D. Fla. July 13, 2007) (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006)).

Defendant argues that the timing of the PIP does not constitute pretext for several reasons. First, Defendant argues that it has no duty to defer Mrs. Constable's PIP until after her pregnancy. (Def.'s Mot. at 13.) Defendant also argues that Mrs. Constable had been counseled regarding her insufficient sales efforts up to five months before she was placed on a PIP. (*Id.* at 14.) Furthermore, Defendant points to evidence that Mrs. Constable herself was concerned about her sales efforts and was afraid she would be "put on a goal timeline." (*Id.* at 15.)

Plaintiff argues that the close temporal proximity between Agilysys, and in particular Mr. DeGroot, learning of her pregnancy and her being placed on a PIP suggests pretext sufficient to survive summary judgment. (Pl.'s Resp. at 12.) Plaintiff notes that Mr. DeGroot placed Mrs. Constable on her PIP within a month of learning she was pregnant. (*Id.*) Furthermore, Plaintiff argues that because Mr. Kelley was not fired despite producing significantly less revenue during

9

his PIP, the Defendant's decision to terminate Mrs. Constable for failing her PIP was pretext. (*Id.* at 13.)

In support of its position on close temporal proximity, Defendant cites a case where the plaintiff was terminated seven months after filing a complaint against his employer, and thus, the court in that case found no close temporal proximity. *Miller v. Lectra USA, Inc.*, 145 Fed. Appx. 315, 318-19 (11th Cir., Aug. 10, 2005). This is notably different than the current case based simply on the significant difference in time between the protected conduct and the adverse employment action. Furthermore, the fact that there were concerns with Mrs. Constable's work performance prior to her becoming pregnant does not eliminate the possibility of pretext. To the extent these concerns were communicated to Mrs. Constable, they were not intended to be disciplinary in nature and thus do not indicate the beginning of the process to terminate Mrs. Constable. (*See* Barnhardt Dep. 107:7-12.) The first official admonishment of Mrs. Constable's performance was the PIP, which was initiated one month after Mr. DeGroot learned of Mrs. Constable's pregnancy, thus establishing close temporal proximity sufficient to survive summary judgment. As a result, Defendant's Motion for Summary Judgment is **DENIED** with respect to Count I, Plaintiff's pregnancy discrimination claim under Title VII.

II.     **The FCRA Does Provide a Cause of Action for Pregnancy Discrimination**

Defendant argues that the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq., does not provide a cause of action for pregnancy discrimination under the umbrella of gender discrimination. (Def.'s Mot. at 22.) Defendant cites a series of District Court cases which held that the FCRA does not prohibit pregnancy discrimination because it is modeled after Title VII, which had to be amended by Congress in order to cover pregnancy discrimination. (*Id.* at 22-23.) These cases rely heavily on *O'Loughlin v. Pinchback*, 579 So.2d 788, 791 (Fla. App. 1991),

which specifically held that the FCRA did not create a cause of action for pregnancy discrimination, as well as the fact that the Florida Legislature amended the FCRA after *O'Loughlin*, but did not add protections for pregnancy discrimination. *See, e.g., Boone v. Total Renal Labs., Inc.*, 565 F. Sup. 2d 1323, 1326 (M.D. Fla. 2008).

Plaintiff counters that in a more recent case, *Carsillo v. City of Lake Worth*, 95 So.2d 1118 (4th Dist. App. 2008), the Florida Appeals Court held that the FCRA does provide a cause of action for pregnancy discrimination. (Pl.'s Resp. at 14.) The reasoning of this new case was adopted by the Middle District of Florida in *Terry v. Real Talent Inc.*, 2009 WL 3494476 (M.D. Fla. 2009), which held that "*Carsillo* clarifies the ambiguity in *O'Loughlin*." *Id.* at *2.

The Court adopts the position stated in *Real Talent* and finds that the FCRA does provide a cause of action for pregnancy discrimination. As a result, Defendant's Motion to Dismiss is **DENIED** with respect to Count II.

### III.  Plaintiff Does Not Contest Summary Judgment with Respect Retaliation Claims

Defendant argues that that the facts on record do not support Plaintiff's retaliation claims because Mrs. Constable never engaged in any protected activity. (Def.'s Mot. at 24.) Plaintiff concedes that these claims cannot be sustained at this time. (Pl.'s Resp. at 14.) As a result, Defendant's Motion for Summary Judgment is **GRANTED** with respect to Counts III and IV, Plaintiff's retaliation claims under Title VII and the FCRA. Accordingly, it is:

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 17) be **GRANTED** in part and **DENIED** in part, as stated in this opinion.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 15th day of June, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

cc: All parties and counsels of record